# Exhibit 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------- X
MOHAMMAD O. FAROQUE, KHALED     :
KHAN, MD IMRANUL HAQUE, KHANDKER  :      Civil Action No. 15-cv-868 (DLI)(CLP)
HAQUE, MOHAMMED S. ALAM, ASAD     :
IKBAL, and MOHAMMED E. KARIM on behalf :
of themselves and on behalf of all other similarly  :
situated persons,                             :
                                         :
                 Plaintiffs,      :
                                       :
        v.                       :
                                       :
PARK WEST EXECUTIVE SERVICES d/b/a   :
TOWN CAR INTERNATIONAL; TOWN CAR  :
INTERNATIONAL HOLDINGS, LLC;      :
ZACHARY BERMAN, in his individual and   :
professional capacities; JOHN M. AHERN, in his :
individual and professional capacities,    :
                                       :
                 Defendants.    :
---------------------------------------------------------- X

## SETTLEMENT AGREEMENT AND RELEASE

       This Settlement Agreement and Release ("Agreement") is entered into by and between Plaintiffs Mohammad O. Faroque, Khaled Khan, MD Imranul Haque, Khandker Haque, Mohammed S. Alam, Asad Ikbal and Mohammed E. Karim (collectively "Named Plaintiffs"), and opt-in Plaintiff Mokles Islam (with "Named Plaintiffs," "Plaintiffs"), on behalf of themselves and the putative Class Members (as defined below), and Defendants Park West Executive Services d/b/a Town Car International, Town Car International Holdings, LLC, Zachary Berman and John M. Ahern (collectively "Defendants").

**1.**      **RECITALS AND BACKGROUND**

       WHEREAS, on or about December 2, 2015, Plaintiff Faroque filed a class and collective action lawsuit on behalf of current and former drivers who provided services through, contracted with, and/or were affiliated with (whether on an individual basis or through a corporate entity) Park West Executive Services d/b/a/ Town Car International or Town Car International Holdings, LLC (collectively "TCI" or "Town Car") during the Relevant Time Period (as defined below), for claims under the wage and hour laws of New York (including the New York Labor Law and Minimum Wage Orders) and for claims as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the "Complaint"); and

WHEREAS, on or about February 3, 2016, Defendants filed a motion to compel arbitration and dismiss the Complaint; and

WHEREAS, on or about February 16, 2016, the Named Plaintiffs filed an Amended Complaint, naming additional plaintiffs, and creating two subclasses within the putative FLSA collective and NYLL class; and

WHEREAS, on or about March 4, 2016, Defendants filed a new motion to compel arbitration, which motion the District Court referred to the Magistrate Judge, who, on or about September 7, 2016, issued a Report and Recommendation recommending the denial of Defendants' motion; and

WHEREAS, on or about March 31, 2017, the District Court adopted the Report and Recommendation, ruling that the Magistrate Judge properly determined that claims predating 2015 Independent Owner-Operator Agreements executed between Town Car and certain Plaintiffs were not subject to arbitration; and

WHEREAS, the parties agreed to engage in private mediation in an effort to resolve this action; and

WHEREAS, the parties engaged in targeted discovery during which Defendants provided to Plaintiffs business records relating to, *inter alia*, the compensation and amounts paid to the Plaintiffs and the putative Class Members during the Relevant Time Period; and

WHEREAS, on or about April 11, 2017, Defendants filed an interlocutory appeal to the Second Circuit Court of Appeals challenging the District Court's determination that claims predating 2015 Independent Owner-Operator Agreements executed between Town Car and certain Plaintiffs were not subject to arbitration; and

WHEREAS, on or about January 10, 2018, the Parties stipulated to withdraw the Second Circuit Appeal, without prejudice to reinstating the case by March 30, 2018, while the parties engaged in mediation; and

WHEREAS, on March 16, 2018, the Parties participated in a full-day mediation session, which was conducted by Martin Scheinman, a highly-regarded, experienced labor and employment mediator who has successfully negotiated settlements in similar class and collective actions involving wage and hour claims against other New York for-hire vehicle businesses, and reached a settlement of the claims of the Plaintiffs and the putative Class Members; and

WHEREAS, on or about March 30, 2018, the Parties stipulated to withdraw the Second Circuit Appeal, without prejudice to reinstating the case by May 31, 2018, while the parties formalized this Agreement; and

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendants agreed to settle the Litigation on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, the purpose of this Agreement is to settle fully and finally resolve all State Law Claims (as defined below) and FLSA Claims (as defined below) between Plaintiffs and putative Class Members on the one hand, and Defendants and Releasees (as defined below) on the other hand, including all claims asserted in the Litigation, in order to avoid the burden, expense, and uncertainty of continuing the Litigation; and

WHEREAS, Plaintiffs and Plaintiffs' Counsel (as defined below) evaluated the merits of the claims made against Defendants and the impact of this Agreement on Plaintiffs and putative Class Members.  Based upon Plaintiffs' and Plaintiffs' Counsel's evaluation of a number of factors and recognition of the substantial risks of continued litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery, might result in a recovery that is less favorable than this settlement, and/or might result in a recovery that cannot be obtained for several years, Plaintiffs and Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of Plaintiffs and putative Class Members.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided in this Agreement, the Parties agree to a full and complete settlement of the Litigation in accordance with the following terms and conditions:

## 2.    DEFINITIONS

The defined terms set forth in this Agreement have the meanings ascribed to them below.

**2.1**    **"Action" or "Litigation."**  The terms "Action" or "Litigation," means the above-captioned litigation, as described in the first "WHEREAS" paragraph above.

**2.2**    **"Administrator" or "Claims Administrator."**  The terms "Administrator" and "Claims Administrator" refer to the administrator selected by the Parties to issue Notice to the Class and otherwise administer the settlement, Arden Claims Services.

**2.3**    **"Agreement."**  The term "Agreement" means this Settlement Agreement and Release.

**2.4**    **"Class" or "Class Member(s)."**  The terms "Class" and "Class Member(s)" refer to all drivers who are or were affiliated with Town Car (whether on an individual basis or through a corporate entity) as independent owner operators, independent contractors, or in substantially similar capacities who earned at least $2,000 from Town Car during the Relevant Period (from December 2, 2009 through the date of preliminary approval) and who do not timely submit Opt-out Statements (as defined below) in accordance with this Agreement.

**2.5**    **"Class Counsel" or "Plaintiffs' Counsel."**  The terms "Class Counsel" and "Plaintiffs' Counsel" refer to Jeanne M. Christensen, Esq., Tanvir H. Rahman, Esq., and Moorea Katz, Esq., of Wigdor LLP, which is located at 85 Fifth Avenue, New York, New York 10003.

3

2.6    **"Class Member List."**   The term "Class Member List" refers to a list of all putative Class Members containing each of their: (i) names; (ii) last known addresses, phone numbers and email addresses (if known and to the extent that such records exist); (iii) total earnings at Town Car per year; and (v) social security numbers, if available, contained in a confidential document that Defendants shall provide to Plaintiffs' Counsel and the Claims Administrator.   The Class Member List is to be used by Plaintiffs' Counsel and the Claims Administrator to effectuate the settlement; it may not be copied, disseminated, or used for any other purpose.   The list sent to Plaintiffs' Counsel will not contain social security numbers.

2.7    **"Court."**   The term "Court" refers to the United States District Court for the Eastern District of New York, which is located at 225 Cadman Plaza East, Brooklyn, New York 11201.

2.8    **"Days."**   The term "days" refers to calendar days, unless otherwise specified.

2.9    **"Defendants."**   The term "Defendants" refers to Park West Executive Services d/b/a Town Car International; Town Car International Holdings, LLC; Zachary Berman, in his individual and professional capacities; and John M. Ahern, in his individual and professional capacities.

2.10   **"Defense Counsel."**   The term "Defense Counsel" refers to Allan S. Bloom, Esq. and Nicole A. Eichberger, Esq. of Proskauer Rose LLP, which is located at Eleven Times Square, New York, New York 10036.

2.11   **"Fairness Hearing."**   The term "Fairness Hearing" refers to the anticipated hearing before the Court relating to the Motion for Final Approval, unless otherwise scheduled by the Court without the filing of a motion.

2.12   **"Final Effective Date."**   The term "Final Effective Date" refers to the date that is thirty (30) days after the Court has entered a Final Order and Judgment of Dismissal with Prejudice (as defined below) approving this Agreement, provided that the time to appeal the Final Order and Judgment of Dismissal with Prejudice has expired and no notice of appeal has been filed.   However, in the event that a notice of appeal is filed, the Final Effective Date shall be the day after the date of the following event that occurs last: (1) any appeal from the Final Order and Judgment of Dismissal with Prejudice has been finally dismissed; (2) the Final Order and Judgment of Dismissal with Prejudice has been affirmed on appeal in a form substantially identical to the form of the Final Order and Judgment of Dismissal with Prejudice entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order and Judgment of Dismissal with Prejudice has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order and Judgment of Dismissal with Prejudice in a form substantially identical to the form of the Final Order and Judgment of Dismissal with Prejudice entered by the Court.

2.13    **"Final Order and Judgment of Dismissal with Prejudice."**  The term "Final Order and Judgment of Dismissal with Prejudice" refers to the order entered by the Court after the Fairness Hearing approving the terms and conditions of this Agreement (including any distribution of Individual Settlement Amounts, Service Awards (as defined below), attorneys' fees, costs and expenses, and Claims Administrator's fees from the Settlement Account) and dismissing the Litigation with prejudice.

2.14    **"FLSA Claims."**  The term "FLSA Claims" refers to all federal wage and hour claims that were or could have been asserted pursuant to the Fair Labor Standards Act by or on behalf of Plaintiffs or putative Class Members, including, but not limited to, all claims for unpaid minimum or overtime wages, any other related wage and hour claims, and all "derivative benefit claims" (defined as claims for benefits, both ERISA and non-ERISA benefits, resulting from an alleged failure to pay wages, including, but not limited to, minimum or overtime wages), as well as any interest and attorneys' fees, costs, and expenses related to such claims.

2.15    **"Named Plaintiffs."**  The term "Named Plaintiffs" refers to Mohammad O. Faroque, Khaled Khan, MD Imranul Haque, Khandker Haque, Mohammed S. Alam, Asad Ikbal, and Mohammed E. Karim.  For avoidance of doubt, Named Plaintiffs are also Class Members.

2.16    **"Notice."**    The term "Notice" refers to the Court-approved Notice of Proposed Settlement and Fairness Hearing.

2.17    **"Objector."**  The term "Objector" refers to any putative Class Member who properly files an objection to this Agreement; the term does not include any individual who opts out of the settlement.

2.18    **"Opt-in Plaintiffs."** The term "Opt-in Plaintiffs" means those individuals who opt in to the Settlement by redeeming/cashing their Settlement Checks before the end of the ninety (90) day acceptance period, and does not include any individual who timely opts out of the settlement pursuant to this Agreement.

2.19    **"Opt-out Statement."**  The term "Opt-out Statement" refers to a written signed statement from a putative Class Member who has decided to opt out of and not be included in the settlement.  Any putative Class Member who does not timely submit an Opt-out Statement waives and releases all State Law Claims, even if he or she does not cash/redeem a Settlement Check, and further waives and releases all FLSA Claims if he or she cashes/redeems a Settlement Check.

2.20    **"Parties."** The term "Parties" refers collectively to Plaintiffs, Defendants and Class Members.

2.21    **"Plaintiffs."**  The term "Plaintiffs" shall mean Named Plaintiffs and Opt-in Plaintiff Mokles Islam.

2.22    **"Preliminary Approval Motion."** The term "Preliminary Approval Motion" refers to Plaintiffs' anticipated motion (to be filed for settlement purposes only) for: (i)

preliminary approval of the settlement; (ii) conditional class action certification pursuant to Federal Rule of Civil Procedure 23; (iii) "conditional certification" of a collective pursuant to the FLSA; (iii) appointment of Plaintiffs' Counsel as Class Counsel; (iv) appointment of the Claims Administrator; and (v) approval of the proposed Notice (as defined below) and direction of its distribution to putative Class Members.

2.23    **"Preliminary Approval Order."**  The term "Preliminary Approval Order" refers to the order entered by the Court with respect to the Preliminary Approval Motion or otherwise providing the relief requested in or contemplated by such motion.

2.24     **"Relevant Time Period."**  The term "Relevant Time Period" refers to the period of time between December 2, 2009 through the date of preliminary approval.

2.25    **"Settlement Account."**  The term "Settlement Account" refers to a qualified settlement fund established by the Administrator, pursuant to this Agreement, at a bank acceptable to the Parties.  The Settlement Account shall contain the Settlement Fund (as defined below).

2.26    **"Settlement Checks."**  The term "Settlement Checks" refers to the checks issued to Class Members from the Settlement Account by the Administrator as calculated by the Administrator in accordance with the terms of this Agreement.

2.27    **"Settlement Fund."**   The term "Settlement Fund" refers to the maximum aggregate amount that shall be paid by Defendants pursuant to this Agreement and includes Individual Settlement Amounts, Service Awards, E&O Fund, Plaintiffs' Counsel's attorneys' fees, costs and expenses, and Claims Administrator's fees, as authorized by the Court in the Final Order and Judgment of Dismissal with Prejudice.   Under no circumstances shall the Settlement Fund exceed Eight Hundred and Fifty Thousand Dollars ($850,000.00)

2.28    **"State Law Claims."**  The term "State Law Claims" refers to all wage and hour claims that were or could have been asserted under the laws of New York State or any other state by or on behalf of Plaintiffs or putative Class Members, including, but not limited to, all claims under state law for unpaid minimum or overtime wages, tip misappropriation claims, unpaid spread-of-hours claims, service charge claims, Wage Theft Prevention Act penalties, any other related wage and hour claims, and all "derivative benefit claims" (defined as claims for benefits, both ERISA and non-ERISA benefits, resulting from an alleged failure to pay wages, including, but not limited to, minimum or overtime wages), as well as any interest and attorneys' fees, costs, and expenses related to such claims.

**3.     INITIAL PROCEDURAL ISSUES**

**3.1**    **Binding Agreement.**  This Agreement is a binding agreement and contains all material agreed-upon terms**.**

**3.2**    **Retention of the Administrator.**  The Parties will use Arden Claims Services as Claims Administrator to administer the settlement.

**3.3     Responsibilities of the Administrator.**  The Administrator shall be responsible for:

A.      preparing, printing and disseminating Notices to putative Class Members;

B.      copying counsel for all Parties on material correspondence and promptly notifying counsel for all Parties of any material requests or communications made by any party;

C.      promptly furnishing to counsel for all Parties copies of any Opt-out Statements, objections, or other written or electronic communications from putative Class Members that the Administrator receives;

D.      providing weekly reports to the Parties regarding the status of the mailing of the Notices to putative Class Members; the claims administration process (including the number of Opt-out Statements or Objections received, as well as the percentage of the Net Settlement Fund that was apportioned to the putative Class Members who submitted Opt-out Statements); the substance and status of disputes raised by putative Class Members regarding the calculation of Settlement Awards; and distribution of the Settlement Checks;

E.      keeping track of Opt-out Statements, including maintaining the original mailing envelopes in which the requests were mailed;

F.      mailing all required tax forms to Class Members and to Class Counsel as provided herein;

G.      setting up a Settlement Account to be used for the distribution of all Settlement Checks to participating Class Members, Plaintiffs' Counsel, and the Claims Administrator;

H.      calculating the amount of each Class Member's Settlement Check;

I.      preparing appropriate tax forms for Defendants and for each Class Member;

J.      mailing the Settlement Checks to Class Members;

K.      ascertaining current address and addressee information for all Notices returned as undeliverable and then re-mailing such Notices;

L.      responding to putative Class Members' inquiries regarding the procedures for filing objections and Opt-out Statements;

M.      referring to Plaintiffs' Counsel all putative Class Members' inquiries regarding matters not within the Administrator's duties specified herein;

N.      responding to inquiries from Class Counsel and Defense Counsel consistent with the Administrator's duties as specified herein;

O.      promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator;

P.      maintaining adequate records of its activities, including the dates that each Notice was mailed, that any returned mail was received, and that any other communications and/or attempted communications with Class Members occurred;

Q.      confirming in writing to Class Counsel and Defense Counsel its completion of the administration of the settlement;

R.      timely responding to communications from the Parties or their counsel;

S.      notifying the parties, pursuant to Section 4.6, below, if and when ten percent (10%) or more of the putative Class Members, or a number of putative Class Members whose Settlement Awards in the aggregate total 10% or more of the total Settlement Fund net of Service Awards, E&O Fund, attorneys' fees, costs and expenses, and Claims Administrator's fees, file timely and valid Opt-out Statements; and

T.      any other tasks upon which the Parties mutually agree.

In the event of a dispute regarding a putative Class Member's or Class Member's Settlement Award or their earnings at Town Car, the Claims Administrator shall promptly report the nature of the dispute to Class Counsel and Defendants' Counsel, who will confer in good faith with the Claims Administrator in an effort to resolve the dispute. In the event Class Counsel and Defendants' Counsel are unable to reach agreement, the Claims Administrator shall decide the dispute, and its decision shall be final.

In addition, no later than fifteen (15) days prior to the Fairness Hearing, the Administrator shall certify jointly to Plaintiffs' Counsel and to Defense Counsel: (a) a list of all Class Members; (b) a list of all putative Class Members who filed timely objections; and (c) a list of all putative Class Members who requested to opt-out of the settlement at any time during the opt-out period. The Administrator also shall provide Plaintiffs' Counsel and Defense Counsel with an updated address list for all Class Members.

**3.4     Preliminary Approval Notice.**  Within fourteen (14) days after the execution of this Agreement, Plaintiffs will file a Preliminary Approval Motion with the Court.   In connection with the Preliminary Approval Motion, Plaintiffs will submit to the Court a proposed Notice of Proposed Settlement and Fairness Hearing in the form attached hereto as Exhibit A; a proposed distribution method for Individual Settlement Amounts and calculation of the Settlement Checks as described in Section 4 herein; and a proposed Preliminary Approval Order.

Defendants shall have the right to review and comment on the Preliminary Approval Motion (as well as the Final Approval Motion) and to approve the content of the proposed Preliminary Approval Order, the proposed Final Approval Order, and the proposed Notice(s).   Class Counsel will provide Defendants with copies of the

Preliminary Approval Motion and proposed Preliminary Approval Order, Final Approval Motion and proposed Final Approval Order, and the proposed Notice(s) and allow at least three (3) business days for their review and approval.  Class Counsel will consider Defendants' comments to both motions in good faith.

Within ten (10) days of the entry of the Preliminary Approval Order, Defendants will send the Administrator and Plaintiffs' Counsel the Class Member List (Plaintiffs' Counsel will not be provided with social security numbers) in electronic form.  All information regarding the Class that is provided by Defense Counsel will be treated as confidential information by Plaintiffs' Counsel and the Administrator.  Said information will not be used by Plaintiffs' Counsel or the Administrator for any purpose other than to effectuate the terms of the settlement.  Unless the parties agree otherwise, only individuals whose names are disclosed on the Class Member List shall be eligible to participate in the settlement.  Within twenty-one (21) days of the entry of the Preliminary Approval Order by the Court, the Administrator will mail to all putative Class Members (*via* First Class Mail through the United States Postal Service) the Court-approved Notice of Proposed Settlement and Fairness Hearing.  The Administrator will take all reasonable steps to obtain the correct address of any putative Class Member for whom a Notice is returned by the United States Postal Service as undeliverable, including one skip trace, and if necessary, make telephone calls and send text messages and/or send emails solely for the purposes of obtaining an updated address, and attempt a re-mailing to any putative Class Member for whom it obtains a more recent address.  The Administrator will notify Plaintiffs' Counsel and Defense Counsel of any Notice sent to a putative Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s).

**3.5**   **Access to the Administrator.**  The Parties will have equal access to the Administrator throughout the claims administration period.  Plaintiffs' Counsel and Defense Counsel agree to provide the Administrator with all information that may assist the Administrator in locating putative Class Members.

**3.6**   **Approval of the Preliminary Approval Order.**

(A)   The proposed Preliminary Approval Order will seek the setting of a deadline of forty-five (45) days from the initial mailing of the Notice to the Class to file Opt-out Statements and/or become Objectors. To the extent any Notice is returned or otherwise determined to be undeliverable, such putative Class Members shall be entitled to fifteen (15) days from the date of any subsequent mailing (but no less than the original forty-five (45) days) to file Opt-out Statements and/or become Objectors.  The proposed Preliminary Approval Order also shall seek to set a date for the Fairness Hearing, which shall be no earlier than one hundred and twenty days (120) days following the date that the Court enters the Preliminary Approval Order.

(B)   In connection with the Preliminary Approval Motion, Named Plaintiffs will inform the Court of the intended process to obtain a "Final Order and Judgment of Dismissal with Prejudice" that will, among other things: (1) approve the

9

settlement as fair, adequate and reasonable; (2) approve payment to the Claims Administrator of claims administration costs; (3) incorporate the terms of the Release, as described herein; (4) dismiss the Litigation with prejudice; (5) award Service Awards to the Plaintiffs; and (6) award Plaintiffs' Counsel fees, costs, and expenses.

(C)  If the Court denies the Preliminary Approval Motion, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial and to seek reconsideration of the ruling or order denying approval and/or Court approval of a renegotiated settlement (without any change to the amount of the Settlement Fund).  If, despite the Parties' efforts, the Court continues to deny the Preliminary Approval Motion, the Litigation will resume as if no settlement had been attempted.  In that event, the class certified for purposes of settlement shall be decertified (either by the Court *sua sponte* or on a motion by Defendants, which Plaintiffs agree not to oppose), and Defendants retain all rights and defenses, including the right to contest whether the Litigation should be certified and maintained as a collective and/or class action and to contest the merits of the claims being asserted in the Litigation.

(D)  The Parties will work together diligently and in good faith to expeditiously obtain a Preliminary Approval Order and a Final Order and Judgment of Dismissal with Prejudice.  Any disputes that may arise between the Parties related to the Parties' efforts to obtain a Preliminary Approval Order and a Final Order and Judgment of Dismissal with Prejudice shall be submitted to the Court. At the appropriate time, Plaintiffs will file an application with the Court requesting a Final Order and Judgment of Dismissal with Prejudice.

(E)  Within fifteen (15) days after the Court enters the Preliminary Approval Order, Defendants, through counsel, shall notify Class Counsel that Defendants have complied with the requirements of 28 U.S.C. § 1715 concerning notifications to appropriate Federal and State officials of this Agreement, and shall, if requested by Class Counsel, provide proof of such compliance.

**3.7  Opt-outs.**

(A)  Putative Class Members who choose to opt out of the settlement, as set forth in this Agreement, must send *via* First Class Mail through the United States Postal Service (postage to be prepaid) a written, signed statement to the Administrator, providing his or her name, address, telephone number, dates worked at Town Car, and a statement indicating his or her intention to opt out of the settlement (*i.e.*, "I opt out of the Town Car wage and hour settlement.").  To be effective, an Opt-out Statement must be postmarked or received by the Administrator within forty-five (45) days after the initial mailing of the Notice to the Class ("Opt-out Period"). However, to the extent any Notice is returned or otherwise determined to be undeliverable, such putative Class Members shall be entitled to fifteen (15) days from the date of any subsequent mailing (but no less than the original forty-five (45) days) to file Opt-out Statements.

(B)     The Administrator will send a final list of all putative Class Members who submit Opt-out Statements to Plaintiffs' Counsel and Defense Counsel before the Fairness Hearing.  The Administrator will retain the stamped originals of all Opt-out Statements as well as all envelopes accompanying such Opt-out Statements until such time as the Administrator is relieved of its duties and responsibilities under this Agreement.

(C)     Any putative Class Member who does not submit an Opt-out Statement pursuant to this Agreement will be deemed to have accepted the settlement, including all terms and conditions of this Agreement, will be bound by the Final Order and Judgment of Dismissal with Prejudice, and will have any and all State Law Claims released and dismissed.  Additionally, any putative Class Member who does not submit an Opt-out Statement pursuant to this Agreement and who has opted in to the Action and/or cashes/redeems a Settlement Check will have any and all FLSA Claims released and dismissed.  For the avoidance of any doubt, any putative Class Member who has neither opted in to this Litigation nor redeemed a Settlement Check shall not release his or her FLSA Claims. **Defendants shall have no obligation to pay any putative Class Member who opts out of the settlement as set forth in this Agreement**.

**3.8     Objections to Settlement.**

(A)     Putative Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing.  To be considered, written objections must be mailed to the Administrator *via* First Class Mail through the United States Postal Service and postmarked within forty-five (45) days after the initial mailing of the Notice to the Class.  However, to the extent any Notices are returned or otherwise determined to be undeliverable, such Class Members shall be entitled to fifteen (15) days from the date of any subsequent mailing (but no less than the original forty-five (45) days) to file objections.  The written objection must include all reasons for the objection as well as any supporting documentation.  The written objection also must include the name, address, dates worked at Town Car, and telephone number of the Class Member making the objection.  The Administrator will stamp the date that the written objection was received on the original and send copies of the objection and any supporting documentation to Class Counsel and Defense Counsel by email delivery no later than three (3) days after receipt of the objection.

(B)     An Objector has the right to appear at the Fairness Hearing, either in person or through counsel hired by the Objector.  An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objection at the time that he or she submits his or her written objection. An Objector may withdraw his or her objection at any time.  The submission of an objection does not constitute the filing of an Opt-out Statement, and, therefore, an Objector continues to be a Class Member.  Absent permission from the Court, no Class Member may appear at the Fairness Hearing unless he or she has filed a timely objection that complies with all procedures provided in this section and the

previous section.   Absent permission from the Court, no Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections.  A putative Class Member who has submitted an Opt-out Statement may not submit objections to the settlement.

(C)   The Parties may file with the Court written responses to any filed objections no later than two (2) days before the Fairness Hearing.

**3.9    Fairness Hearing and Motion for Final Approval and Dismissal.**  At the Fairness Hearing, the Parties will request that the Court, among other things: (1) approve the Agreement as fair, reasonable, adequate, and binding on all Class Members who have not timely opted out of the settlement; (2) order the Administrator to distribute the Settlement Checks to Class Members; (3) order the Plaintiffs' Counsel's attorneys' fees, expenses, and costs to be paid to Plaintiffs' Counsel out of the Settlement Account; (4) order Service Awards to be paid out of the Settlement Account; (5) order the Claims Administrator's fees to be paid out of the Settlement Account; (6) order the dismissal with prejudice of all State Law Claims by all Class Members who did not opt out of the settlement; (7) order the dismissal with prejudice of all FLSA Claims by all Class Members who cash/redeem a Settlement Check or who have opted in to this action; (8) order the entry of a Final Order and Judgment of Dismissal with Prejudice in accordance with this Agreement; and (9) retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of or related to the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**3.10   Effect of Failure to Grant Final Approval/Status of Settlement if Case Is Not Ultimately Dismissed.**  If the Court denies Plaintiffs' Motion for Judgment and Final Approval, the Parties will work together, diligently and in good faith, to remedy any issue(s) leading to such denial and to seek reconsideration and/or appellate review of the ruling or order denying the motion and/or Court approval of a renegotiated settlement (without any change to the amount of the Settlement Fund).  If, despite the Parties' efforts, the Court continues to deny the motion for final approval (or otherwise to approve the Settlement), then the settlement will become null and void, provided that the failure by the Court or an appellate court to award or sustain the full amount of the Service Awards to Plaintiffs or Class Counsel's attorneys' fees and expenses will not constitute a failure to approve the settlement or a material modification of the Settlement.  However, nothing herein precludes Plaintiffs and/or Class Counsel from appealing any decision by the Court or an appellate court to not approve the full amounts of requested Service Awards to Plaintiffs or attorneys' fees and expenses to Class Counsel, and Defendants will not oppose any such appeals.  If the settlement becomes null and void:

(A)   The Litigation will proceed as if no settlement had been attempted, no portion of the Settlement Account will be distributed, and the entire Settlement Account will revert to Defendants.  In that event, the class certified for purposes of settlement shall be decertified (either by the Court *sua sponte* or on a motion by Defendants, which Plaintiffs agree not to oppose), and Defendants retain all rights and defenses, including the right to contest whether the Litigation should be certified

and maintained as a collective and/or class action and to contest the merits of the claims being asserted in the Litigation.

(B)     Class Counsel will provide notice to putative and participating Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail to the addresses used by the Claims Administrator in mailing the **Notice of Proposed Settlement and Fairness Hearing**.

(C)     The Parties agree to share jointly the costs of the Claims Administrator's fees incurred, in the event the Court denies final approval, through the date the Administrator sends notice to putative and participating Class Members that the Agreement did not receive final approval and that, as a result, no payments will be made to Class Members under the Agreement.

## 4.    SETTLEMENT TERMS

### 4.1    Settlement Fund Computation and Allocations.

Class Members' individual, proportionate shares of the Settlement Fund shall be computed in accordance with the formula below:

(A)     All putative Class Members who worked as drivers affiliated with Town Car and received at least $2,000 from Town Car during the Relevant Time Period, shall receive 1.0 point for every $100 earned from Town Car from December 2, 2009 through December 31, 2014, and 0.25 points for every $100 earned from Town Car subsequent to December 31, 2014 through the date of preliminary approval. In addition, any putative Class Members who have opted in to this Action as of the date of execution of this Agreement shall receive an additional 0.25 points for every $100 earned from Town Car, if any, beginning three years before the date their opt-in forms were filed with the Court through the date of preliminary approval.  This method shall be referred to as the "Allocation Formula."

(B)     Class Members who have submitted opt-in forms in this Action through the date of execution of this Agreement, and the date in which their respective opt-in form was filed, are:

1.  Mohammad Faroque:  12/8/15
2.  Khaled M. Khan:  12/8/15
3.  MD Hossain Azmal:  12/8/15
4.  Asad Ikbal:  12/14/15
5.  Farhat Abbas:  12/14/15
6.  MD Imranul Haque:  12/14/15
7.  Mokles Islam:  12/14/15
8.  Mohammed E. Karim:  12/17/15
9.  Abdul Haque:  12/22/15

13

10. Mohammed H. Rahman:  12/28/15
11. Mohammed Hakim:  12/29/15
12. Mohammed S. Alam:  1/5/16
13. Rejaul Karim:  1/6/16
14. Mustak Ahmed:  1/13/16
15. Manzoor Mumin:  1/19/16
16. Jung Chen:  1/19/16
17. Ladifogon Ye:  1/22/16
18. Moinul Alam:  1/27/16
19. Shoab Hussain:  2/2/16
20. Khondker Haque:  2/2/16
21. Siliwange Nln:  2/2/16
22. Guoqiang Zhao:  2/8/16
23. Faizul Islam:  2/9/16
24. Mohammed Hussain:  2/12/16
25. Mohammed Halim:  4/25/16
26. Mohammed Haroon:  5/3/16
27. Nur Biswas:  6/9/16
28. Abu Chowdhury:  4/13/17
29. Sharder Rahman:  6/14/17
30. Feroj Ahmad:  6/14/17
31. Asm Rahman:  6/19/17
32. Abu Chowdhury:  7/05/17
33. Danilo Picon:  7/5/17
34. Syed Ahmed:  7/17/17
35. Khalil Shah:  10/2/17
36. Ammar Khan:  10/16/17

(C)     The Settlement Fund, after deductions for Court-approved Plaintiffs' Counsel's attorneys' fees, costs and expenses, Claims Administrator's fees, Court-approved Service Awards, E&O Fund of $10,000, and any other Court-approved expenses or disbursements, will be divided by the aggregate number of points accrued by all putative Class Members ("Per Point Value").

(D)     Each putative Class Member's total points will be multiplied by the Per Point Value to determine his or her "Initial Individual Settlement Amount."   In the Notice, each Class Member will be informed about his or her estimated "Initial Individual Settlement Amount," subject to modification based on such considerations as the number of Class Members who opt out of the settlement, any adjustments that need to be made to the data that initially computed the Per Point Values for the Class Members, and the anticipated amount of attorneys' fees, expenses and costs, Service Awards, E&O Fund, and other payments, if any, that Plaintiffs will be requesting from the Court.

(E)     After the Notice period, the Administrator will re-run the Allocation Formula amongst the remaining Class Members (*i.e.*, those putative Class Members who have not opted out of the settlement) to determine the amount of each Class

Member's settlement payment ("Individual Settlement Amount").  The parties will cooperate in good faith to obtain updated mailing addresses for Class Members for the purposes of sending them their Individual Settlement Amounts.

(F)    Only Class Members (*i.e.*, putative Class Members who do not timely opt out of the settlement) shall be entitled to receive their respective Individual Settlement Amounts.

(G)    **Service Awards.**  Class Counsel shall seek Court approval of the payment of the following Service Awards to Plaintiffs in consideration for work performed on behalf of the Class:  Mohammed O. Faroque, $10,000; Khaled Khan, $7,500; Mohammed E. Karim, $7,500; Mokles Islam, $7,500; MD Imranul Haque, $1,875; Khandker Haque, $1,875; Mohammed S. Alam, $1,875; and Asad Ikbal, $1,875 (collectively, "Service Awards").  Defendants shall not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided it does not increase the amount of the Settlement Fund.  In the event that the Court solicits Defendants' position regarding the Service Awards, Defendants will inform the Court that they take no position provided that the Service Awards do not increase the amount of the Settlement Fund.  The substance of the application for Service Awards is not part of this Agreement and is to be considered separately from the Court's consideration of the Parties' good faith efforts in resolving the Litigation and the fairness, reasonableness, and adequacy of this Agreement.  The outcome of the Court's ruling on the application for Service Awards shall not terminate this Agreement or otherwise affect the Court's Final Approval of the settlement.  Any requested Service Awards that are not approved by the Court will be distributed to Class Members in accordance with Section 4.1 above.

(H)    **E&O Fund.**    $10,000 from the Settlement Fund will be placed by the Administrator within fourteen (14) days after receipt of Defendants' payments pursuant to Section 4.1(I) into a separate interest-bearing account to cover errors and omissions occurring through the settlement distribution process (the "E&O Fund").  The Administrator shall have the right and obligation to disburse amounts from the E&O Fund consistent with the letter and spirit of this Agreement.

(I)    **Maximum Amount.**  The Parties expressly acknowledge and agree that, in connection with the settlement of the Litigation and pursuant to the terms of this Agreement, Defendants shall not be required to pay more than the amount of the Settlement Fund ($850,000.00) to Class Members, Plaintiffs' Counsel, the Claims Administrator, or to anyone else in connection with this settlement (except for its own attorneys and advisors), regardless of the number of putative Class Members ultimately included in the settlement.

(J)    **Payment.**  The Settlement Account shall be funded by Defendants through one or more payments comprising the total amount of the Settlement Fund ($850,000.00)

due as a result of the settlement.  The payment(s) shall be made by Defendants no later than fourteen (14) days after the Final Effective Date.

(K)     **Mailing of Settlement Checks.**

(i)     The Claims Administrator shall, within fourteen (14) days after receipt of Defendants' payments pursuant to Section 4.1(J), send Settlement Checks comprising Class Members' Individual Settlement Amounts, Class Counsel's attorneys' fees, costs and expenses, Plaintiffs' Service Awards, and the Claims Administrator's fees.  Putative Class Members who file timely Opt-out Statements will not receive a Settlement Check.

(ii)    Class Members shall have ninety (90) days after their respective Settlement Checks are mailed in the First Distribution to redeem them.

(iii)   The Claims Administrator shall, within fourteen (14) days following the expiration of the Settlement Checks from the First Distribution, mail new Settlement Checks to any Class Members who did not cash/redeem their Settlement Checks within the required ninety (90) day period.

(iv)    Class Members receiving new Settlement Checks in the Second Distribution shall have thirty (30) days after their respective Settlement Checks are mailed to redeem them.

(v)     Seventy Five percent (75%) of any unclaimed settlement funds not claimed/cashed within thirty (30) days of the second distribution will revert to Defendants.

(vi)    Twenty Five percent (25%) of any unclaimed settlement funds not claimed/cashed within thirty (30) days of the second distribution, plus any remaining amount in the E&O Fund, will be distributed among Participating Class Members pro rata.  The parties agree that if is not administratively feasible to make an additional distribution of the remaining amount to Class Members, which the parties agree will be presumptively unfeasible to administer if the remaining funds are less than $10,000 in the aggregate, the unclaimed payments will be donated under the *cy pres* doctrine to a charitable organization of Class Counsel's choosing.

**4.2     Attorneys' Fees, Expenses, and Costs.**  At the Fairness Hearing, Class Counsel will petition the Court for an award of attorneys' fees not to exceed Two Hundred Eighty Three Thousand Three Hundred Thirty Three Dollars ($283,333.00) (or one-third of the total Settlement Fund) and for reimbursement of their actual litigation expenses and costs.  These fees and expenses shall be paid from the Settlement Fund.  Defendants will not oppose this application, including any appeal or request for reconsideration if the application is denied or modified by the Court, provided that the application does not increase the amount of the Settlement Fund.  The substance of Class Counsel's

application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval.  Any attorneys' fees and costs that are not approved by the Court will be distributed to Class Members in accordance with Section 4.1 above.

**4.3**    **Mediator's Fees.**  All fees of the mediator in connection with the mediation of this settlement will be borne by Defendants.

**4.4**    **Claims Administrator's Fees.**  As part of Plaintiffs' Motion for Final Approval, Plaintiffs will submit a declaration from the Claims Administrator, Arden Claims Services, detailing the administration process and the costs of administration.  The Claims Administrator's fees shall be deducted from the Settlement Fund prior to the distribution of any monies to Class Members, Plaintiffs, and Plaintiffs' Counsel.  The Claims Administrator's fees shall not exceed $35,000.

**4.5**    **Tax Characterization.**

(A)    Settlement payments to Class Members will be reported for tax purposes on an IRS Form 1099 issued to each Class Member who cashes/redeems a settlement check and does not timely opt out.  The payment of attorneys' fees, expenses, and costs pursuant to Section 4.2 shall be made without any withholdings, and Class Counsel shall receive an IRS Form 1099 for this payment.  All Service Awards paid to Plaintiffs shall be made without any withholdings and reported to the IRS on IRS Forms 1099.

(B)    Neither Class Counsel nor Defendants' Counsel intend anything contained herein to constitute legal advice regarding the taxability of any amount paid hereunder, nor will it be relied upon as such.

**4.6**    **Right of Defendants to Reject Settlement.**  If ten percent (10%) or more of the putative Class Members, or a number of putative Class Members whose Settlement Awards in the aggregate total 10% or more of the total Settlement Fund net of Service Awards, E&O Fund, attorneys' fees, costs and expenses, and Claims Administrator's fees, file timely and valid Opt-out Statements, then Defendants will have the right to rescind the Settlement, and the settlement and all actions taken in its furtherance will be null and void.  Defendants must exercise this right within fourteen (14) days after the Administrator notifies them that either of the two thresholds set forth above in this paragraph have been met.  If Defendants exercise their right to rescind the Settlement, Defendants will be responsible for the Claims Administrator fees incurred through the date of rescission or thereafter.

**4.7    Hold Harmless.**

(A)    With respect to all payments made pursuant to this Agreement other than payments for the Claims Administrator's fees, Plaintiffs and Class Members assume full responsibility for any and all federal, state, and local taxes or contributions that may hereafter be imposed or required to be paid in accordance with any federal, state, or local law or regulation.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the IRS or any other federal, state, or local government, administrative agency, or court determines that Defendants and/or any individual or entity are liable for any failure by any Plaintiff, Class Member, and/or Defendant to pay federal, state, or local income, employment, or payroll taxes with respect to any payment made pursuant to this Agreement, Plaintiffs and Class Members agree to hold Releasees (as defined below) harmless and to indemnify Releasees for any payments that Releasees may be required to make (including any payments for interest and penalties) to any taxing authority resulting from the issuance of an IRS Form 1099 and any Plaintiff's and/or Class Member's failure to pay any taxes that any such individual or entity owes as a consequence of said income.

(B)    With respect to payments received pursuant to this Agreement that are characterized as attorneys' fees, costs, or expenses, Class Counsel assumes full responsibility for any and all federal, state, and local taxes or contributions that may hereafter be imposed or required to be paid pursuant to any federal, state, or local law or regulation.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement is proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the IRS or any other federal, state or local government, administrative agency, or court determines that Class Counsel is liable for any federal, state, or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as attorneys' fees, costs, or expenses, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

**5.    RELEASE AND OTHER TERMS**

**5.1    Release of Claims.**

(A)    Upon the Court's issuance of the Final Order and Judgment of Dismissal with Prejudice, for and in consideration of the promises of Defendants set forth in this Agreement, including the establishment of the Settlement Fund and the payment of all fees and expenses approved, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, each putative Class Member who does not timely opt out of the settlement, on behalf of himself or herself and on behalf of his or her respective current, former, and future heirs, spouses, executors, administrators, agents, attorneys, and assigns, irrevocably

waives, releases, and fully discharges Defendants, Defendants' present, former, and future parents, subsidiaries, affiliates, and related entities, including each of their respective present and former shareholders, members, owners, officers, investors, directors, employees, managers, fiduciaries, trustees, employee benefit plan administrators, agents, attorneys, insurers, representatives, successors, and assigns, as well as any persons or entities acting in concert with any of them and any individual or entity that could be jointly liable with any of them (collectively, "Releasees") from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints, or suits of any kind that relate to his or her compensation or any wage and hour violations that may have occurred during, arising from, or relating to each Class Member's service relationship, independent owner-operator relationship, contractual relationship, employment, and/or affiliation with Defendants under federal, state, and/or local law through the beginning of the world through the end of the Relevant Time Period (*i.e.,* through the date of preliminary approval), including, but not limited to, any and all claims for unpaid wages, overtime compensation, gratuities, tips, tip credits, tip allowances, service charges, administrative charges, operational charges, other mandatory charges, commissions, improper deductions, travel time, bonuses, penalties, spread-of-hours pay, meal breaks, meal credits, uniform maintenance, uniform reimbursement, expense reimbursement, failure to maintain and furnish employees with proper wage notices and statements, other compensation, wages, or benefits, including, but not limited to, life insurance, accidental death and disability insurance, sick leave, other employer-provided plans or programs, distributions of income or profit, vacation or other leave time, retirement benefits, pension benefits, and any other claims that were or could have been asserted in the Litigation, whether known or unknown, under federal, state, and/or local wage and hour laws (including, but not limited to, the New York Labor Law, New York Code of Rules and Regulations, New York Minimum Wage Order for Miscellaneous Industries and Occupations, and New York Wage Theft Prevention Act), from the beginning of the world through the end of the Relevant Time Period. This release includes all claims for relief relating to any such released claims, including claims for liquidated damages, punitive damages, penalties, interest, and attorneys' fees, costs, and expenses. Nothing contained in the release set forth in this Section 5.1(A), however, shall preclude any Class Member from pursuing any claims that are not releasable as a matter of law (which claims Defendants expressly reserve the right to contest), provided, however, that FLSA Claims will be released by putative Class Members who have opted in to the Action and/or who cash/redeem a Settlement Check, in accordance with Section 5.1(B), below. Nothing contained in the release set forth in this Section 5.1(A) shall release any Class Member's rights to any vested benefits under any applicable benefit plan.

(B)     In addition, upon the Court's issuance of the Final Order and Judgment of Dismissal with Prejudice, for and in consideration of the promises of Defendants set forth in this Agreement as described above, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, any

putative Class Member has opted in to the Action and/or who cashes/redeems a Settlement Check, on behalf of himself or herself and on behalf of his or her respective current, former, and future heirs, spouses, executors, administrators, agents, attorneys, and assigns, irrevocably waives, releases, and fully discharges the Releasees from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints, or suits of any kind under the Fair Labor Standards Act from the beginning of the world through the end of the Relevant Time Period. This release includes all claims for relief relating to any such released claims, including claims for liquidated damages, penalties, interest, and attorneys' fees, costs, and expenses. The Claims Administrator shall provide Defendants with a scanned copy of each Settlement Check after it has been redeemed.

(C)     Upon payment of the attorneys' fees, expenses, and costs approved by the Court, Plaintiffs' Counsel, Plaintiffs, and Class Members hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that he, she, or they may have against Defendants for attorneys' fees, expenses, or costs associated with Plaintiffs' Counsel's representation of Plaintiffs and Class Members for their claims released pursuant to Section 5.1(A). Plaintiffs' Counsel further understands and agrees that any fee payments approved by the Court will be the full, final, and complete payment of all attorneys' fees, expenses, and costs associated with Plaintiffs' Counsel's representation relating to the Litigation.

(D)     In addition to the waiver and release above, in consideration for the Service Awards set forth in Section 4.1(F), each Plaintiff receiving a Service Award knowingly and voluntarily, on behalf of himself or herself and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, attorneys, and assigns, irrevocably waives, releases, and fully discharges Releasees from any and all claims, debts, losses, demands, obligations, liabilities, causes of action, charges, grievances, complaints, or suits of any kind that may be legally waived by private agreement, whether known or unknown, from the beginning of the world through the date on which each respective Plaintiff executes this Agreement, including, but not limited to: (i) claims arising directly or indirectly from each Plaintiff's association with Releasees, whether as an employee, independent contractor, or otherwise, and/or the termination of that association; (ii) claims arising directly or indirectly from the actions or inaction of Releasees; (iii) claims under federal, state, or local laws, statutes, constitutions, regulations, rules, ordinances, or orders, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Civil Rights Act of 1866, Sections 1981 through 1988 of Title 42 of the United States Code, the Age Discrimination in Employment Act, the Americans with Disabilities Act of 1990, the Employee Retirement Income Security Act of 1974, the Equal Pay Act, the Immigration Reform and Control Act, the Consolidated Omnibus Budget Reconciliation Act, the Fair Credit Reporting Act, the Occupational Safety and Health Act, the Family and Medical Leave Act of 1993, the New York State Human Rights Law,

the New York State Civil Rights Law, and the New York City Human Rights Law, each as amended, and any other federal, state, or municipal law; and (iv) any other claims, whether for monies owed, reimbursement, attorneys' fees, litigation costs, damages, torts, intentional infliction of emotional distress, negligence, promissory estoppel, breach of contract, breach of an implied covenant of good faith and fair dealing, constructive discharge, wrongful discharge, defamation, fraud, misrepresentation, or otherwise, arising prior to or at the time of each Plaintiff's execution of the Agreement. This release includes all claims for damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees, expenses, and costs. Nothing contained in the release shall preclude any Plaintiff from pursuing any claims for unemployment insurance benefits or workers' compensation benefits. Provided, however that the failure of the Court to approve the general releases contemplated by this Section 5.1(D) will not constitute a failure to approve the settlement. Moreover, nothing contained in the release shall release any Plaintiff's rights to any vested benefits under any applicable benefit plan.

(E)     All Settlement Checks shall contain on the back of the check (or on documents attached to and/or accompanying the Settlement Checks, as described in Section 5.1(F), below, the following limited endorsement:

"**CONSENT TO JOIN AND FINAL RELEASE OF CLAIMS:**

By endorsing and/or redeeming this check, I consent to join in the case entitled *Mohammad O. Faroque, et al., v. Park West Executive Services d/b/a Town Car International, et al.*, Civil Action No. 15-CV-6868(DLI)(CLP), now pending in the United States District Court, District for the Eastern District of New York, and I agree to be bound by the Settlement Agreement negotiated by Class Counsel in that case.

I irrevocably and unconditionally waive, release, and forever discharge any claim I might have against Park West Executive Services d/b/a Town Car International; Town Car International Holdings, LLC; Zachary Berman; and John M. Ahern, and the other Releasees listed in the Settlement Agreement (including the owners and officers of such entities) for any and all wage-and-hour claims, rights, and causes of action, whether known or unknown, under any federal, state, or local wage and hour law, including but not limited to the Fair Labor Standards Act, the New York Labor Law, the New York Minimum Wage Orders, and all applicable state and local wage-and-hour laws, and including without limitation statutory, constitutional, contractual, and common law claims for wages and any damages, costs, penalties, liquidated damages, punitive damages, interest, attorneys' fees, restitution, or equitable relief to the extent relating to or deriving from a wage-and-hour claim (including claims for minimum wage and overtime) relating to my affiliation with Town Car up to and including [date of Preliminary Approval Order].

_____     Dated: _____”
        Signature

(F)    If the Claims Administrator is not able to include the entire text of the limited endorsement described in Section 5.1(E), above, on the back of the Settlement Checks, the Parties will work diligently and in good faith to: (i) revise the endorsement and/or the documents attached to and/or accompanying the Settlement Checks; (ii) include the endorsement on a document attached to and/or accompanying the Settlement Checks and incorporate it on the back of the Settlement Checks by reference; and/or (iii) take other steps to effectuate both a consent to join the Litigation and a release of the claims described in the limited endorsement, above, by virtue of the recipient of a Settlement Check signing and/or endorsing the check.

**5.2**    **No Assignment.**  Class Counsel and Plaintiffs, on behalf of the Class and each individual Class Member, represent and warrant that they have not assigned or transferred (or purported to assign or transfer) to any person or entity any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation or any related action.

**5.3**    **No Admission of Liability.**  By entering into this Agreement, Defendants do not admit and expressly deny any violation of law or any liability whatsoever to Plaintiffs and/or putative Class Members, individually or collectively, or to anyone else as a result of or growing out of the matters set forth in the complaint filed in the Litigation.  Defendants do not admit and expressly deny that any of the putative Class Members are employees of any of the Defendants for any purposes whatsoever (including under any statute law, rule, regulation, common law, agreement, policy, or plan).  Likewise, by entering into this Agreement, Defendants do not admit to the suitability of this case for class or collective action litigation other than for purposes of settlement.  Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs and putative Class Members.  The settlement of the Litigation, the negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or as an admission or evidence of the truth of any of the factual allegations in the Complaint filed in the Action; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative, or arbitral proceeding.  The Parties understand and agree that this Agreement is a settlement document and that it shall be inadmissible as evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of this Agreement.

**6.**    **INTERPRETATION AND ENFORCEMENT**

**6.1**    **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms.  Each party, upon the request of any other party, agrees to perform such

further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.  In the event of any disputes regarding this Agreement, including Preliminary Approval, Final Approval or Settlement Fund distribution, prior to filing a motion with the Court, the Parties agree to attempt to resolve with mediator Martin Scheinman to impasse.

6.2     **No Other Representations.**  Each party acknowledges that, except as expressly set forth herein, no representations of any kind or character have been made by any party or parties, agents, representatives, or attorneys to induce the execution of this Agreement.

6.3     **Entire Agreement.**  This Agreement is an integrated contract that constitutes and contains the entire agreement between the Parties with regard to the subject matter contained herein and supersedes and replaces all prior negotiations and agreements, proposed or otherwise, written or oral, concerning the subject matter contained herein. All prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

6.4     **Binding Effect.**  This Agreement shall be binding upon the Parties and, with respect to Plaintiffs and Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys, and assigns.

6.5     **Waiver of Unknown Claims.** It is the desire of the Parties to fully, finally, and forever settle, compromise, and discharge all Released Claims which were or which could have been asserted in this Action against the Released Parties, whether known or unknown, liquidated or unliquidated, to the extent relating to or deriving from a wage-and-hour claim (including claims for overtime wages or any other wages) relating to Plaintiffs' affiliation with Town Car up to and including the date of the Preliminary Approval Order.  Plaintiffs may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but upon the entry of the Judgment, Plaintiffs shall be deemed to have, and by operation of the Judgment shall have, fully, finally, and forever settled and released any and all Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

6.6     **Limited Confidentiality.** Plaintiffs and Class Counsel agree to keep the negotiations leading up to this Agreement and the amount of individual Class Members' Settlement Awards (together, "Confidential Settlement Issues") confidential until such time as a motion for preliminary approval is filed with the Court.  Notwithstanding the foregoing, Plaintiffs may disclose Confidential Settlement Issues to their attorneys, accountants and immediate families; to the Court and Court personnel, as necessary to seek Court approval of this Settlement; and otherwise as required by court or governmental order, subpoena, or as otherwise directed by law.  If required by court or governmental order, subpoena, or otherwise as required by law to disclose Confidential Settlement Issues,

Plaintiffs will notify Defendants through Defendants' Counsel prior to making such disclosure and permit Defendants a reasonable time to object to such disclosure. Plaintiffs and their attorneys shall make no public statement concerning Confidential Settlement Issues until such time as a motion for preliminary approval is filed with the Court.

6.7     **Arm's Length Transaction; Materiality of Terms.**  The Parties have negotiated all of the terms and conditions of this Agreement at arm's length.   All of the terms and conditions of this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

6.8     **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

6.9     **Construction.**  The determination of the terms and conditions of this Agreement was by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and, therefore, the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

6.10    **Severability.**   If any provision of this Agreement is held by a court of competent jurisdiction to be invalid or unenforceable (other than Sections 5.1(A) and 5.1(B)), the remaining provisions of this Agreement shall continue in full force and effect.  In the event that a Class Member attempts to seek recovery for any claim that is subject to the release set forth in Sections 5.1(A) and 5.1(B) and a court of competent jurisdiction determines that Sections 5.1(A) or 5.1(B), or any portions thereof, is unenforceable, then: (i) Defendants' financial obligations with respect to that Class Member under Section 4 shall be null and void; and (ii) that Class Member shall be liable for the return of his or her Individual Settlement Amount and, if applicable, Service Award.

6.11    **Governing Law.**  The rights and obligations of the Parties set forth in this Agreement shall be construed and enforced in accordance with, and shall be governed by, the laws of the State of New York, without regard to conflict of laws principles, except to the extent that federal law governs.

6.12    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.   However, if the Court should refuse or decline to accept jurisdiction over the settlement for any reason, the Parties agree that this Agreement may be enforced in any court of competent jurisdiction located in the State of New York, County of New York.  The Court's refusal to retain jurisdiction over the settlement shall not void or otherwise effect this Agreement.

6.13    **Waivers, Modifications, and Amendments.**  No waiver, modification, or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in a writing signed by or on

behalf of all Parties and then only to the extent set forth in such written waiver, modification, or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement.  Notwithstanding any such failure, such party shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

6.14    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its full execution and final approval by the Court.  The Parties may execute this Agreement in counterparts, which, when taken together, shall constitute a complete agreement.  Each counterpart shall have the same validity, force, and effect as if all Parties had signed the same instrument.

6.15    **Facsimile and Email Signatures.**  Any party may execute this Agreement and cause its counsel to transmit its executed signature page *via* facsimile or email to counsel for the other party.  Any signature transmitted by facsimile or email shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

7.    **IMPORTANT ACKNOWLEDGEMENTS**

7.1    **General Acknowledgements.**  It is understood and agreed that the Settlement Fund and the other good and valuable consideration provided for herein are not a mere recital but are the consideration for this Agreement and all terms herein, including the full and final release effected thereby.  The Parties represent and warrant that all payments made from the Settlement Fund to Plaintiffs, Class Members, and Class Counsel are fair and reasonable.  The Parties represent and warrant that they are entering into this Agreement of their own free will and accord after consultation with their attorneys.  The Parties acknowledge that they have jointly prepared this Agreement and that they are executing this Agreement knowingly and voluntarily.

[REMAINDER OF PAGE INTENTIONALLY BLANK –
SIGNATURES ON FOLLOWING PAGE]

**IN WITNESS WHEREOF**, the Parties hereto have executed, or caused their duly authorized officers to execute, this Agreement as of the dates set forth below.

FOR PLAINTIFFS:

**WIGDOR LLP** (as to §§ 4.2, 4.7(b), 5.1(c), 5.2 & 6.6 only)

Dated: _____          By: _____
                                       JEANNE M. CHRISTENSEN, ESQ.


**MOHAMMAD O. FAROQUE**

Dated: _____          _____


**KHALED KHAN**

Dated: _____          _____


**MD IMRANUL HAQUE**

Dated: _____          _____


**KHANDKER HAQUE**

Dated: _____          _____


**MOHAMMED S. ALAM**

Dated: _____          _____


**ASAD IKBAL**

Dated: _____          _____


26

**MOHAMMED E. KARIM**

Dated: _____    _____

**MOKLES ISLAM**

Dated: _____    _____


_____

FOR DEFENDANTS:

**PARK WEST EXECUTIVE SERVICES d/b/a
TOWN CAR INTERNATIONAL**

Dated: _____    By: _____
                            Name:
                            Title:

**TOWN CAR INTERNATIONAL HOLDINGS,
LLC**

Dated: _____    By: _____
                            Name:
                            Title:


**ZACHARY BERMAN**

Dated: _____    _____


**JOHN M. AHERN**

Dated: _____    _____