UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MOHAMMAD O. FAROQUE, KHALED KHAN, MD IMRANUL HAQUE, KHANDKER HAQUE, MOHAMMED S. ALAM, ASAD IKBAL, and MOHAMMED E. KARIM *on behalf of themselves and on behalf of all other similarly situated persons*,

                        Plaintiffs,

             -against-

PARK WEST EXECUTIVE SERVICES d/b/a TOWN CAR INTERNATIONAL; TOWN CAR INTERNATIONAL HOLDINGS, LLC; ZACHARY BERMAN, *in his individual and professional capacities*; JOHN M. AHERN, *in his individual and professional capacities*,

                        Defendants.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
15 CV 6868 (DLI) (CLP)

**POLLAK**, United States Magistrate Judge:

      On December 2, 2015, plaintiff Mohammad Faroque commenced this class action and collective action on behalf of himself and others similarly situated against defendant Park West Executive Services, d/b/a Town Car International, Town Car International Holdings, Zachary Berman ("Mr. Berman"), and John M. Ahern ("Mr. Ahern") (collectively "defendants"), alleging that defendants failed to pay their employees proper overtime wages and improperly deducted wages, in violation of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA") and New York Labor Law § 190 et seq. and § 650 et seq. ("NYLL"). On February 16, 2016, plaintiffs filed an Amended Complaint, adding Khaled Khan, MD Imranul Haque, Khandker Haque, Mohammed S. Alam, Asad Ikbal, and Mohammed E. Karim as plaintiffs (collectively with

Faroque, "plaintiffs").  (See generally Am. Compl.[1]).

On October 19, 2018, this Court issued a Report and Recommendation respectfully recommending that plaintiffs' motion for preliminary approval of the proposed Settlement, as articulated in the Settlement Agreement, be approved.[2]  The Court further recommended that the class be certified for the purposes of settlement and Class Notice of the proposed Settlement be disseminated.  On March 31, 2019, The Honorable Chief Judge Dora Lizette Irizarry adopted the Report and Recommendation in full.

On August 13, 2019, plaintiffs moved for final settlement approval.  (Pls.' Mot.[3]).  On August 26, 2019, this Court held a hearing to determine whether the settlement was "fair, reasonable, and adequate."  City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds, Goldberger v. Integrated Restaurant, Inc., 209 F.3d 43 (2d Cir. 2000).  On October 3, 2019, The Honorable Chief Judge Dora Lizette Irizarry referred plaintiffs' motion to the undersigned to issue a Report and Recommendation.  For the reasons set forth below, the Court respectfully recommends approval of the proposed Class Settlement, approval of plaintiffs' counsel's award of attorneys' fees as requested and costs as reduced below, and approval of the proposed service awards to the named plaintiffs.

---

[1] Citations to "Am. Compl." refer to plaintiffs' Amended Complaint, filed February 16, 2016, ECF No. 54.
[2] Citations to "10/19/2018 R&R" refer to the Report and Recommendation of this Court, dated October 19, 2018, ECF No. 107.
[3] Citations to "Pls.' Mot." refer to plaintiffs' Motion for Settlement Final Approval, filed August 13, 2018, ECF No. 114.

2

FACTUAL BACKGROUND

Defendants operate a "black car" transportation service for which plaintiffs performed work as drivers. (Pls.' Mem.[4] at 1). Defendant Berman is the president and a primary owner of Town Car International, and defendant Ahern is a primary owner of Town Car International. (Am. Compl. ¶¶ 16, 17). Plaintiffs allege that at all relevant times, defendant Town Car International was an "employer" within the meaning of all applicable statutes. (Id. ¶ 18). Plaintiffs allege that defendants improperly classified plaintiffs as independent contractors rather than employees, and forced them and other drivers to sign a contract governing independent contractor services for defendants, referred to as the Independent Contractor Agreement ("IOO Agreement"). (Id. ¶¶ 53, 54; Pls.' Mem. at 1).

Plaintiffs further allege that defendants failed to pay plaintiffs: (1) wages for off-the-clock work; (2) wages for overtime work at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours per workweek; (3) wages earned in accordance with their agreed terms of employment; and (4) wages for spread-of-hours pay on days they worked more than 10 hours. (Am. Compl. ¶ 31).

PROCEDURAL HISTORY

On February 3, 2016, defendants moved to compel arbitration and dismiss the Complaint. (Pls.' Mem. at 2). Thereafter, on February 16, 2016, plaintiffs filed an Amended Complaint in which they created two subclasses within the putative FLSA collective and NYLL class, comprising: (a) drivers who at no point executed an IOO Agreement containing an arbitration of

---

[4] Citations to "Pls.' Mem." refer to plaintiffs' Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement, filed August 13, 2019, ECF No. 115.

3

claims provision; and (b) drivers who executed an IOO Agreement containing an arbitration provision but performed work for defendants pre-dating these agreements (and thus arguably had claims that were not subject to arbitration).  (Id.; See generally Am. Compl.).  On March 4, 2016, defendants renewed their motion to compel arbitration.  (Pls.' Mem. at 2).  On September 7, 2016, this Court issued a Report and Recommendation recommending the denial of defendants' motion, which the District Court adopted.  (Id.)  Despite the defendants' filing of an appeal of the District Court's order, the parties agreed to stipulate to dismissal of the appeal and attempt mediation.  (Id. at 3).

In the lead up to the mediation, the parties engaged in extensive discovery in which defendants provided information on assignments and rides which drivers performed, the amounts paid to drivers, various fees and charges paid by customers, and itemized deductions and adjustments taken against drivers' earnings.  (Id.)  This information was submitted to a mediator, Martin F. Scheinman, Esq., and the parties attended a full-day mediation session on March 16, 2018.  (Id. at 4).  After this discovery and mediation, the parties agreed to settle the action on a classwide basis.  (Id.)  The parties then drafted the Settlement Agreement,[5] and on May 14, 2018, plaintiffs moved for preliminary approval of the Settlement.  (Id.)  On October 19, 2018, this Court issued a Report and Recommendation granting preliminary approval of the Class.  (Id.; 10/19/2018 R&R).  On March 31, 2019, The Honorable Chief Judge Dora Lizette Irizarry adopted the Report and Recommendation in full.

As set forth in this Court's October 19, 2018 Report, recommending preliminary approval

---

[5] Citations to "Sett. Agr." refer to the Settlement Agreement and Release, filed by plaintiffs on filed on August 13, 2019, ECF No. 116-1.

of the settlement, the Settlement Agreement provides for the payment of $850,000 into a settlement fund (the "Settlement Fund") to resolve this action on a class basis.  (10/19/2018 R&R; Sett. Agr. § 2.27; Pls.' Mem. at 4).  The Settlement Fund will be awarded as follows:  (1) all Class Members who participate in the settlement shall receive their allocated share; (2) Class Counsel, Wigdor LLP ("Wigdor") will be compensated at a rate of 33.33% of the Settlement Fund; (3) plaintiffs and opt-in plaintiff Mokles Islam will receive Service Awards; and (4) the costs in administering the settlement will be paid.  (Pls.' Mem. at 4; see Sett. Agr.).  The entire Settlement Fund—after funds for attorneys' fees and costs, service awards, and claims administration costs are deducted—will then be distributed to Class Members, who will be issued settlement checks representing their proportionate share of the Settlement.  (Id.; Sett. Agr. § 4.1(K)(i)).

The parties engaged Arden Claims Services, Inc., a claims administration service, to disseminate the Court-approved Notice of the Settlement.  (Pls.' Mem. at 4; Ex. 5[6]).  Notices were sent to 749 putative Class Members, 36 of whom, or 4.81%, were never located.  (Ferrante Aff.[7] ¶¶ 7, 9).  No putative Class Member objected to or opted out of the Settlement.  (Id. ¶¶ 10-11).

In granting preliminary approval of the Class Settlement, this Court set forth in its October 19, 2018 Report and Recommendation a detailed analysis of the legal standards under Rule 23 of the Federal Rules of Civil Procedure and the application of those standards to the

---

[6] Citations to "Ex. 5" refer to the Class Notice, filed as Exhibit 5 to plaintiffs' Declaration in Support of Motion for Settlement Final Approval, filed on August 13, 2019, ECF No. 116-5.

[7] Citations to "Ferrante Aff." refer to the Affidavit of Angela Ferrante Regarding Notice and Settlement Administration, filed on August 13, 2019, ECF No. 116-6.

facts and circumstances surrounding this Settlement. (See 10/19/2018 R&R). That analysis is incorporated by reference herein and repeated only to the extent necessary to address issues relating to the pending motion for Final Approval of the Settlement.

On August 13, 2019, plaintiffs moved for final settlement approval. (Pls.' Mot.). On August 26, 2019, this Court held a fairness hearing on plaintiffs' motion for final approval of the Settlement. On October 3, 2019, The Honorable Chief Judge Dora Lizette Irizarry referred plaintiffs' motion to the undersigned to issue a Report and Recommendation.

For the reasons set forth below, the Court respectfully recommends that the District Court approve the Class Settlement, approve plaintiffs' counsel's request for attorneys' fees as requested and costs as reduced, and approve the requested service awards.

DISCUSSION

A. Standards

To grant final approval of a class settlement under Rule 23(e), the Court must determine that the proposed settlement is "fair, adequate, and reasonable, and not the product of collusion." Joel A. v. Giuliani, 218 F.3d 132, 138 (2d Cir. 2000) (citations omitted); see Fed. R. Civ. P. 23(e). Judicial policy favors the settlement and compromise of class actions. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d 96, 116-17 (2d Cir. 2005); see also In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 535 (3d Cir. 2004). Whether a settlement is fair is a determination within the sound discretion of the court. Levitt v. Rodgers, 257 F. App'x 450, 453 (2d Cir. 2007) (citing In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1368 (2d Cir. 1991)).

Generally, approval of a class action settlement involves a two-step process. First, the court preliminarily approves the proposed settlement by evaluating the written submissions and

informal presentation of the settling parties and the negotiating process leading to the settlement. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116. Second, the court holds a fairness hearing to "determine whether the settlement's terms are fair, adequate, and reasonable . . . ." Capsolas v. Pasta Res., Inc., No. 10 CV 5595, 2012 WL 4760910, at *4 (E.D.N.Y. Oct. 5, 2012).

In City of Detroit v. Grinnell Corp., the Second Circuit enumerated nine factors to guide courts at the final approval stage in evaluating the substantive fairness of a proposed settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the Settlement Fund in light of the best possible recovery; and (9) the range of reasonableness of the Settlement Fund to a possible recovery in light of all the attendant risks of litigation[.]

495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds, Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also D'Amato v. Deutsche Bank, 236 F.3d 78, 86 (2d Cir. 2001); Garcia v. Pancho Villa's of Huntington Village, No. 09 CV 486, 2012 WL 5305694, at *4 (E.D.N.Y. Oct. 4, 2012).

The court must also determine if the settlement was "achieved through arms-length negotiations by counsel with the experience and ability to effectively represent the class's interests." Becher v. Long Island Lighting Co., 64 F. Supp. 2d 174, 178 (E.D.N.Y. 1999) (citing Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982)); see also D'Amato v. Deutsche Bank, 236 F.3d at 85 (noting that the district court must "determine a settlement's fairness by examining the negotiating process leading up to the settlement as well as the settlement's substantive terms"); In re Nissan Radiator/Transmission Cooler Litig., No. 10 CV 7493, 2013

7

WL 4080946, at *4 (S.D.N.Y. May 30, 2013). In reviewing a proposed settlement, the court has the "'fiduciary responsibility of ensuring that the settlement is . . . not a product of collusion, and that the class members' interests [were] represented adequately.'" Clement v. Am. Honda Fin. Corp., 176 F.R.D. 15, 29 (D. Conn. 1997) (internal citation omitted) (quoting In re Warner Commc'ns Secs. Litig., 798 F.2d 35, 37 (2d Cir. 1986)).

B. Analysis of Procedural Fairness

As plaintiffs' counsel notes in their Memorandum of Law in Support of Plaintiffs' Unopposed Motion for Final Approval of Class Settlement, this settlement was entered into only after counsel's significant exchange of documents and information, substantial analysis of the information by experienced counsel, and a successful mediation session. (Pls.' Mem. at 11). During the process of litigation and negotiation, the parties assessed the potential benefits and risks of continued litigation and determined that settlement was appropriate in this case. (Id.)

Being familiar with the strengths and weaknesses of each side's case and the risks posed by continued litigation, this Court is of the view that the settlement was the product of arms-length negotiations. Given the presumption of fairness when a class settlement has been reached after "arm's-length negotiations between experienced, capable counsel after meaningful discovery," see Wal-Mart Stores, Inc. v. Visa U.S.A. Inc., 396 F.3d at 116, the Court finds that the process of reaching the proposed settlement in this case was procedurally fair.

C. Analysis of Substantive Fairness

1. Complexity, Expense, Discovery, and the Duration of the Litigation

Turning to the Grinnell factors, the parties state that a settlement here would avoid significant cost and, further, expedite compensation to Class Members. (Pls.' Mem. at 12). Prior

8

to this settlement, the parties engaged in targeted pre-mediation discovery consisting of, *inter alia*, exchange and analysis of hundreds of thousands of rows of data which defendants had produced concerning wage deductions and unpaid overtime. (Id.) The parties state that this targeted discovery was sufficient to resolve the action responsibly and give the parties an adequate appreciation of the merits of the case. (Id. at 13).

The parties state that this targeted discovery was extremely time consuming and expensive, and further, that if this case were to proceed to trial, full discovery would be required to establish liability, damages, and to maintain class certification. (Id. at 12). Plaintiffs note that numerous depositions of Town Car's managerial staff, employees, such as dispatchers and putative Class Members, and Town Car's customers would need to be conducted if this case were to proceed. (Id.) The parties state that this process would be significantly more costly and time consuming than the discovery which has taken place, and delay any compensation to Class Members. (Id.)

Following this expected extensive discovery, the parties state that they would enter into protracted litigation, consisting of motion practice and a probable trial, which would then likely be followed by an appeal. (Id. at 13). In reaching a favorable settlement here, the parties state that "meaningful monetary relief [is] available to Class Members in a prompt, efficient and virtually risk-free manner." (Id.) Thus, the Grinnell factor of avoiding potential protracted litigation favors settlement of this matter.

### 2. Establishing Liability and Damages

The risk of establishing liability and damages also favors settling this dispute. Plaintiffs acknowledge the fact that defendants had potentially meritorious defenses that, while plaintiffs

9

state they felt confident in addressing, still needed to be considering in settling this matter. (Id. at 14). These defenses included: (1) defendants' assertion that all drivers were properly classified as independent contractors and were ineligible for the stated wage claims; (2) defendants' pending appeal of an Order denying their motion to compel arbitration, which, if successful, would significantly reduce the Class size; and (3) defendants' assertion that the challenged wage deductions were lawful. (Id.) Depending on the resolution of these matters during the course of litigation, Class Members risked a reduction or elimination of their damage award. Accordingly, the proposed settlement seeks to avoid these risks. (Id. at 14). In light of the foregoing, considering the risks of the pending appeal and the prolonged nature of the litigation, the Court finds that this factor favors approval of the proposed settlement.

3. Risk of Losing Certification

Plaintiffs acknowledge that there is a risk involved in obtaining class certification and maintaining it throughout trial, as defendants could move for decertification prior to trial. (Id. at 15). Plaintiffs further state that defendants would likely argue that the differences in Class Members' claims preclude certification based on recent Supreme Court precedent. (Id.) Plaintiffs state that "Risk, expense, and delay permeate the class certification process." (Id.) Considering the risks involved in maintaining class certification throughout trial, the Court finds that this factor favors approval of the proposed settlement.

4. Range of Reasonableness of the Settlement

Plaintiffs state that a best-case scenario would result in a total settlement amount of $3 million, before accounting for any potential liquidated damages award. (Id. at 17). Plaintiffs state that the $850,000 settlement amount represents a fair value to Class Members given the

10

risks involved in the ligation of this matter. (Id. at 16). For example, plaintiffs acknowledge that a finding that Town Car had correctly classified all employees would be a complete bar to plaintiffs' recovery. (Id.) When viewed in light of the significant risks involved in litigating these claims, the Court finds the Settlement is fair, reasonable, and adequate.

### 5. Defendants' Ability to Withstand a Greater Judgment

Regarding defendants' ability to withstand a greater judgment than the $850,000 settlement amount found here, plaintiffs note that they have doubts about defendants' long-term viability. (Id. at 15). Plaintiffs state that defendants, as operators of a car service, exist in an environment of tremendous competition due to the success of "ride sharing" companies, such as Uber and Lyft, which provide consumers with an alternative to defendants' business. (Id.) As such, plaintiffs raise concerns about their ability to collect a larger judgment from Town Car, if one were to be awarded. (Id. at 17). Plaintiffs contend that this Settlement all but eliminates the risks associated with collectability. (Id.) The Court finds that this factor weighs in favor of the settlement in this matter.

### 6. Reaction of Class to Settlement

Finally, the reaction of the Class has been overwhelmingly positive. (Id. at 13). The parties engaged Arden Claims Services, Inc., a claims administration service, to disseminate the Court-approved Notice of the Settlement. (Id. at 4; Ex. 5). Plaintiffs state that 749 Class Members were sent the Class Notice detailing the terms of the settlement, their estimated awards, and the manner through which they could object to or exclude themselves from the Class. (Pls.' Mem. at 4, 13; Ferrante Aff. ¶¶ 7, 9). Over 95% of Class Members received the Notice, and not

a single Class Member objected to or opted out of the Settlement. (Pls.' Mem. at 13; Ferrante Aff. ¶¶ 10-11).

A review of the various Grinnell factors, including the overwhelmingly positive response to the Settlement by the Class Members, reinforces the Court's conclusion that the Settlement is fair, adequate and reasonable. See Sakiko Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 432-33 (S.D.N.Y. 2014) (holding that the fact that "the vast majority of class members neither objected nor opted out is a strong indication that the proposed settlement is fair, reasonable, and adequate") (citing Wright v. Stern, 553 F. Supp. 2d 337, 345 (S.D.N.Y. 2008)); see also Sewell v. Bovis Lend Lease, Inc., No. 09 CV 6548, 2012 WL 1320124, at *7 (S.D.N.Y. Apr. 16, 2012) (stating that "[t]he fact that the overwhelming majority of class members have neither objected nor opted out weighs in favor of settlement approval").

Accordingly, for the reasons stated above, the Court respectfully recommends that final approval of the Class Settlement in this case be granted as the Settlement is fair, adequate and reasonable.

D. Attorneys' Fees, Litigation Expenses, and Service Awards

Class Counsel seeks final approval of an award of fees in the amount of $283,333, costs in the amount of $4,104, and service awards for the Class representatives. (Pls.' Mem. at 17, 22, 26).

1) Attorneys' Fees

In considering the fee request, the Court looked to 1) counsel's time and effort in connection with the litigation; 2) the quality of the representation; 3) the complexity of the litigation; 4) the risks of litigation; 5) the relationship of the fee to the settlement; and 6) public

policy concerns. See United States v. City of New York, No. 07 CV 2067, 2016 WL 3417218, at *2 (E.D.N.Y. June 16, 2016).

Courts have significant discretion in awarding attorneys' fees. Courts in this circuit routinely grant attorneys' fees of 30% to 33.33% in class action cases where counsel's fee was contingent on success. See Khait v. Whirlpool Corp., No. 06 CV 6381, 2010 WL 2025106, at *8 (E.D.N.Y. Jan. 20, 2010) (citing cases and awarding attorneys' fees equal to 33% of $3 million fund); see also Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2008) (approving attorneys' fees of 33.3% of a $1.5 million settlement fund); Seijas v. Republic of Argentina, No. 04 CV 1085, 2017 WL 1511352, at *13 (S.D.N.Y. 2017). Here, counsel is requesting 33.33% of the common fund, which is justified given the considerable time and effort devoted by counsel to reaching a successful conclusion for the Class.

According to Class Counsel, Wigdor LLP, counsel's firm charges paying clients at a rate of $850-$1,100 per hour for partner time, $350-$650 per hour for associate time, and $180 per hour for paralegal time. (Pls.' Mem. at 21; Ex 8[8]). For this matter, counsel has discounted their rates to $750 per hour for Partner Jeanne M. Christensen, $495 per hour for Senior Associates Tanvir Rahman and Elizabeth Chen, $295 per hour for non-Senior Associates, and $185 per hour for paralegals. (Pls.' Mem. at 21).

Counsel further states that the firm devoted a total of 777 hours to this matter. (Pls.' Mem. at 21; Ex 7[9]). Counsel states that these hours consisted of substantial time dedicated to the

---

[8] Citations to "Ex. 8" refer to retainer agreements provided by Wigdor which illustrate the rates that the firm typically charges, filed as Exhibit 8 to plaintiffs' Declaration in Support of Motion for Settlement Final Approval, filed on August 13, 2019, ECF No. 116-8.

[9] Class Counsel filed an itemized list of hours billed in this matter as Exhibit 7 to

investigation, prosecution, and resolution of this action. (Id.) Although the attorneys' standard billing rates are high when compared to rates normally awarded in the Eastern District of New York, and the number of hours seems high, counsel argues that the resulting lodestar of $311,697 reflects counsel's extensive efforts on behalf of the clients in this case. (Id.)

After review of the billing statements provided by counsel, the Court is satisfied that these hours were reasonable and necessary to the resolution of this case. Counsel's requested fee of $283,333, which is less than the loadstar, represents a 0.909 multiplier and reflects the reasonableness of the requested fee. (Id. at 23). Further, Class Counsel prosecuted this action on a wholly contingent basis in the face of significant risk, as an unsuccessful outcome would result in the award of no fee to counsel. (Id.)

The amount of time and effort expended by counsel is reasonable considering the size of the Class and the time involved in the investigation, prosecution, and resolution of this matter. As such, the Court finds these fees to be necessary and incidental to Class Counsel's representation of the Class and, therefore, finds such fees to be reasonable. The Court respectfully recommends that plaintiffs' counsel be awarded attorneys' fees in the amount of $283,333.

2) Expenses

Apart from attorneys' fees, plaintiffs' counsel requests reimbursement of $4,104 in costs and expenses.[10] See In re Air Cargo Shipping Servs. Antitrust Litig., No. 06 MD 1775, 2015

---

plaintiffs' Declaration in Support of Motion for Settlement Final Approval, filed on August 13, 2019, ECF No. 116-7.

[10] Class Counsel filed an itemized list of expenses in this matter as Exhibit 12 to plaintiffs' Declaration in Support of Motion for Settlement Final Approval, filed on August 13,

WL 5918273, at *7 (E.D.N.Y. Oct. 9, 2015) (holding that courts "normally grant expense requests in common fund cases as a matter of course").

Having reviewed the supporting paperwork submitted by plaintiffs' counsel, the Court finds certain of counsel's requested costs and expenses inappropriate. Counsel seeks reimbursement of the following costs in this matter: (1) $628.40 for copies; (2) $400.00 for the filing fee in this action; (3) $467.44 for attorney meal expenses; (4) $27.29 for overnight delivery fees; (5) $134.30 for PACER fees; (6) $13.80 for postage; (7) $480 for process server fees; (8) $30.00 to obtain records; (9) $580.32 for attorney taxi costs; (10) $500 for the costs of transcripts; and (11) $842.45 for Westlaw research costs. (Ex. 12).

The Court finds counsel's requested fees for copies, filing fees, mailing and postage, PACER, service of process, records requests, transcripts, and Westlaw research to be reasonable and typical for fees and costs request. However, the Court finds the requests for attorney meal and taxi expenses to be an inappropriate use of Class funds.

Accordingly, the Court respectfully recommends the reduction of counsel's requested fees and costs from $4,104 to $3,056.24, representing the deductions of $467.44 in attorney meal expenses and $580.32 in attorney taxi costs. The Court recommends that this remaining amount of the Settlement Fund, $1,047.76, be distributed among the Class Members in their proportionate shares.

---

2019, ECF No. 116-12.

      3) <u>Service Awards</u>

Plaintiffs have also requested service awards for each of the named plaintiffs and opt-in plaintiff Mokles Islam. (Pls.' Mem. at 18). Plaintiffs request these service awards in recognition of the named plaintiffs' services to the Class, which include, *inter alia*: (1) coming forth and engaging Class Counsel to pursue their claims and the claims of the Class; (2) providing documents and information to Class Counsel; (3) assisting in the preparation of pleadings; (4) searching for relevant documents; (5) meeting and communicating with Class Counsel at all phases during the litigation and pre-mediation process; (6) meeting and preparing for mediation; (7) communicating with other putative Class Members about their potential claims; (8) attending and actively participating in the mediation or otherwise making themselves available to answer questions and make decisions during the mediation; (9) undertaking the risk of retaliation by holding their name out in the caption of a publicly filed Complaint; (10) undertaking the risk of retaliation or other detrimental effects by coming forward in an action against a former employer; and (11) undertaking the risk of being responsible for litigation costs and expenses in the event a favorable litigation outcome did not result. (Pls.' Mem. at 17-18). Plaintiffs' request service awards to Class representatives in the following amounts: $10,000 to plaintiff Faroque; $7,500 to plaintiff Khaled Khan; $7,500 to plaintiff Mohammed E. Karim; $7,500 to plaintiff Mokles Islam; $1,875 to plaintiff MD Imranul Haque, $1,875 to plaintiff Khandker Haque; $1,875 to plaintiff Mohammed S. Alam; and $1,875 to plaintiff Asad Ikbal. (Pls.' Mem. at 18; Sett. Agr. § 4.1(G)). See <u>Karic v. Major Auto. Cos., Inc.</u>, No. 09 CV 5708, 2016 WL 1745037, at *8 (E.D.N.Y. Apr. 27, 2016).

Having reviewed the supporting paperwork from Class Counsel regarding the time and effort devoted by the Class representatives in assisting in the prosecution of the case, the Court finds these awards reasonable and justified and respectfully recommends that they be granted.

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the motion for final approval of the Class Settlement be granted, along with plaintiffs' counsel's request for attorneys' fees as requested and costs as reduced, and approval of the service awards.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 29, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York